**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CALVIN STOVALL**                                                          **PETITIONER**

**v.**                               **4:04CR00035-03 BRW**
                              **4:11CV00208 BRW**

**UNITED STATES OF AMERICA**                                    **RESPONDENT**

**ORDER**

Pending is Petitioner Calvin Stovall's Motion / Amended Motion to Vacate, Set Aside, or

Correct Sentence under 28 U.S.C. § 2255 (Doc. Nos. 508, 563).  The Government has

responded,[1] and Petitioner has replied.[2]  For the reasons set out below, the Motion is DENIED.

**I.      BACKGROUND**

The procedural history of this case has been well summarized by the Eighth Circuit:

A federal grand jury returned a four-count indictment against Vertis Clay, Calvin
Stovall, and Darryl Walker: Count 1 charged Clay, Stovall, and Walker with
conspiracy to possess and distribute at least 100 kilograms of marijuana; Count 2
charged Clay, Stovall, and Walker with conspiracy to use and discharge a firearm
during and in relation to a drug trafficking crime; Count 3 charged Stovall with
solicitation of a crime of violence, in violation of 18 U.S.C. § 373; and Count 4
charged Clay and Walker with use of a firearm to commit first-degree murder during
and in relation to a drug trafficking crime.

Darryl Walker pleaded guilty to Count 4. Walker's sentence was held in abeyance
pending resolution of Clay's and Stovall's cases. Prior to trial, Stovall's attorney
requested a continuance for health reasons. Because the continuance was
unavoidable, the government moved to sever the trial and proceed to trial against
Clay only.  Over Clay's objections, the district court granted the government's
motion to sever, and Clay's trial commenced.

Following a month-long trial, the jury returned guilty verdicts on all counts against
Clay and sentenced him to life imprisonment without possibility of parole on
Count 4. The court sentenced Clay to the statutory maximum of 40 years on

---

[1]Doc. No. 568.  The Assistant United States Attorney will be referred to in this Order as
"AUSA."

[2]Doc. No. 569.

Count 1 and the statutory maximum of ten years on Count 2 to run concurrently with Clay's life sentence.

Following Clay's trial, rather than proceeding to trial alone, Stovall pleaded guilty to Count 1. Because the plea agreement did not include an agreed recommended sentence, a sentencing hearing was scheduled. After a three-day hearing, the court sentenced Stovall to life imprisonment.[3]

Stovall appealed, arguing that: (1) the Government breached the plea agreement; (2) I erred by severing the case and admitting evidence from Clay's trial; (3) he had a right to the burden of proof of beyond a reasonable doubt as to separate crimes; and (4) his life sentence was unreasonable.  The Court of Appeals for the Eighth Circuit affirmed.[4]

On March 2, 2011, Stovall filed this § 2255 Motion, which included a letter from Mr. Robert Morehead, the lawyer who represented him at sentencing.[5]  In the letter, Morehead writes that he did not represent Calvin Stovall effectively in many respects.[6]  The Government contends that Stovall's Motion should be denied for various reasons.[7]  I heard arguments in connection with Stovall's Motion on July 6, 2012 (the "§ 2255 Hearing"), after which the parties filed additional briefs.[8]

---

[3]*United States v. Clay*, 579 F.3d 919, 924 (8th Cir. 2009).

[4]*Clay*, 579 F.3d at 934.

[5]Doc. No. 508.  Stovall filed his Motion pro se, but then was appointed counsel. His lawyer filed an Amended Motion.  Doc. No. 563.

[6]Doc. No. 510.

[7]Doc. No. 568.

[8]Doc. Nos. 580, 583, and 584.

## II.  DISCUSSION

### A.  Timeliness

"Under the prison mailbox rule, a pro se pleading is deemed filed upon deposit in the prison mail system prior to the expiration of the filing deadline."[9]  A pro se inmante must meet the requirements of Federal Rule of Appellate Procedure 4(c) to gain the benefits of the mailbox rule.[10]  Under Rule 4(c), "the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."[11]  The inmate must show that the filing was timely by including a declaration or notarized statement setting out the date the pleading was deposited in the mail along with a statement that first-class postage has been prepaid.[12]

Here, Stovall included a declaration with his Motion.  The declaration indicates the deposit date of February 18, 2011, and that first-class postage was prepaid.  Stovall's one-year deadline for filing a § 2255 motion ended on February 22, 2011[13]-- four days after Stovall deposited his motion with the prison's staff through the institution's legal mailing system. Therefore, Stovall's motion is timely.  Stovall's amended motion, which fleshes out arguments made in his original motion, relates back to his original motion and is timely as well.

---

[9]*United States v. Harrison*, 469 F.3d 1216, 1217 (8th Cir. 2006) (citations omitted).

[10]*Grady v. United States*, 269 F.3d 913, 916 (8th Cir. 2001).

[11]Fed. R. App. P. 4(c)(1).

[12]*Id.*

[13]The United States Supreme Court denied Stovall's motion for certiorari on February 22, 2010.

**B.      Section 2255 Hearing Testimony and Morehead's Letter versus the Change-of-Plea and Sentencing Hearings**

As a background for examining Petitioner's claims, I think it will be helpful to compare salient portions of the July 6, 2012, § 2255 Hearing testimony and Morehead's January 26, 2011, letter with testimony at the January 21, 2008 change-of-plea and June 3-4, 2008, sentencing hearings.  The quotes from the § 2255 Hearing and Morehead's letter, on the one side, and from the change-of-plea and sentencing hearings, on the other, cannot be two blocked -- I credit the statements made at the plea and sentencing hearings.

| *NOTICE OF THE MAXIMUM TERM OF IMPRISONMENT*: | | |
|---|---|---|
| § 2255 Hearing Testimony | | Change-of-Plea Hearing Testimony |
| *Morehead:* | I'm telling the Court that I agreed to plead to a marijuana charge and I was not aware, for sentencing purposes, that he was subject to a life sentence.  That's what I'm telling you, ma'am.[14] | *The Court:* — All right.  Count 1, and I'll summarize it, the conspiracy to possess with intent to distribute marijuana, in violation of federal law.  The maximum penalties under the statute are not less than ten years, **not more than life**, not more than $4 million fine, or both of those together, special assessment of a hundred dollars, supervised release of not less than eight years.  Do I have that right? |
| *Morehead:* | I didn't prepare that stipulation and it did not mention a life sentence.  And if and when I signed it, I had no idea that Calvin Stovall would be exposed to a life sentence or I wouldn't have signed it and wouldn't have agreed to it.[15] | *Stovall*: — **Yes**. |
| | | *Morehead*: — **That's our understanding**. |
| *Morehead:* | When I arrived at the presentencing hearing, I still --whether you will accept it or believe it or not -- was not of the mindset that Calvin Stovall was going to be exposed to a life sentence.[16] | *The Court*: — All right.  Does the Government agree?  Or is anybody here to speak on behalf of the Government? |
| | | *AUSA*: — Your Honor, we agree, and just by background, the Government has filed the 851 enhancement due to Mr. Stovall's prior drug conviction.  Therefore, **it starts at ten and goes to life** for this amount of marijuana.[17] |

[14]Doc. No. 578 -- § 2255 Hearing Tr. at 37.

[15]*Id*. at 38.

[16]*Id*. at 43.

[17]Doc. No. 481 -- Change-of-Plea Hearing at 6 (emphasis added).

| *NOTICE OF CONSIDERING STOVALL'S MURDER-RELATED CONDUCT AT SENTENCING:* | |
|---|---|
| <u>§ 2255 Hearing Testimony</u> | <u>Change-of-Plea Hearing Testimony</u> |
| AUSA: Did you agree with Mr. Volpe that we were going to litigate whether or not Mr. Stovall was involved in the murder? | The Court: **I guess it will be litigated as to whether or not Mr. Stovall was involved with Mr. Clay in the homicide that he was involved in?** |
| Morehead: That's not my understanding.[18] | Morehead: Well -- |
| | AUSA: Yes, sir. |
| <u>Morehead's Letter</u> | Morehead: **To the extent it's allowable.** |
| I also failed to explain the plea agreement to Mr. Stovall. I told him that since the plea had been changed and that the main charges were dismissed, he would no longer be exposed to murder. I told him that because co-defendants, Clay and Walker, names were not in the plea, that the Government couldn't use their conduct against him.[19] | The Court: **Well, I'll allow you to object, but I may hear evidence pertaining to that. Do you understand that?** |
| | Morehead: **I understand.** |
| | The Court: **Do you understand that, Mr. Stovall?** |
| | Stovall: **Yes, sir.  I understand.**[20] |
| | The Court: And you understand if you plead guilty when we have the sentencing hearing, that -- I mentioned this earlier, but I want to mention it again, both the Government can bring in bad things about you to try to get me to give you more, and you can bring in good things about you to try to get me to give you less than the sentencing guideline.  Do you understand that? |
| | Stovall: Yes, I understand that. |
| | The Court: And the standard of proof will be by the greater weight of the evidence rather than beyond a reasonable doubt.  Do you understand that? |
| | Stovall: Yes, sir.[21] |

---

[18]Doc. No. 578 -- § 2255 Hearing Tr. at 37.

[19]Doc. No. 510.

[20]Doc. No. 481 -- Plea Hearing Tr. at 17 (emphasis added).

[21]*Id.* at 10-11.

| | | | | |
|---|---|---|---|---|
| ***IN CONNECTION WITH UNDERSTANDING THE USSG AND REVIEWING THE PRESENTENCE REPORT*** | | | | |
| <u>§ 2255 Hearing Testimony</u> | | | <u>Change-of-Plea Hearing Testimony</u> | |
| *The Court*: | Read what [the sentencing transcript has] there. | | *The Court*: | Have you gone over the federal sentencing guidelines with [Mr. Morehead]? |
| *AUSA*: | You said, "There's been a presentence report that I'll go through.  I understand that there are objections, there are written objections, and I will hear evidence on those objections."  And then you asked, "Have both sides had all the time they need to review the presentence report?"  Mr. Volpe responded, "Yes, sir."  Mr. Morehead responded, "Yes, Your Honor." | | *Stovall*: what | I'm -- yes, sir, I'm pretty -- I'm aware of my charges. |
| | | | *The Court*: | Do you understand them in a general way? |
| | | | *Morehead*: | Yes, sir.  We're getting better detail.  I've explained and he's explained when we get a presenetence report. |
| *Morehead*: | He did not ask me if I read it. He asked me if I had all the time I needed to review it.  And my answer to you is still the same, ma'am.  At that time, I had no idea that Calvin Stovall was exposed to a life sentence.[22] | | *The Court*: | Well, have you gone over the – |
| | | | *Morehead*: | The basic, yes.  He understands that. |
| | | | *The Court*: | You understand the basics of the federal Sentencing Guidelines? |
| *AUSA*: | Did you ever discuss with Mr. Stovall what the relevant conduct would be at sentencing? | | *Stovall*: | Yes, sir.  I understand that **no less than ten years and life**. That's what I understand. |
| *Morehead*: | I can't say that I recall.[23] | | | **** |
| *AUSA:* | So before sentencing, you knew that the murder enhancement was going to be involved? | | *The Court*: | I sentence most people within the guideline range, unless there's some reasonable ground to go above the guideline range or reasonable ground to go below it.  Do you understand that? |
| *Morehead*: | I didn't understand that.[24] | | *Stovall*: | Reasonable grounds would be relevant conduct or something of that nature? |
| | | | *The Court*: | That's right. [25] |

---

[22]Doc. No. 578 -- § 2255 Hearing Tr. at 44.

[23]*Id*. at 48.

[24]*Id*. at 40.

[25]Doc. No. 481 -- Plea Hearing Tr. at 4-5.

| | |
|---|---|
| *The Court*: | All right.  Do you have any questions about the guidelines or do you want to take a recess and talk to your lawyer or do you want to ask me any questions? |
| *Stovall*: | I'm pretty much -- I pretty much know. |
| *Morehead*: | He's up on that, Judge.  That was the problem why we couldn't get over before because he was pushing for a specific recommendation from the prosecution.  We've been over the sentencing rules and regulations and procedures and he's personally aware of them.[26] |

<u>Sentencing Hearing Testimony</u>

| | |
|---|---|
| *The Court*: | Do you think there's any reason you should be allowed to withdraw the guilty plea that you entered on January the 31st of this year? |
| *Stovall*: | Yes, sir, I am, because I wasn't -- I didn't plead out to the overt acts or the irrelevant [sic] conduct.[27] |
| *The Court*: | Have both sides had all of the time they need to review the presentence report? |
| *AUSA*: | Yes, sir. |
| *Morehead*: | Yes, Your Honor.[28] |

---

[26]Doc. No. 481 -- Plea Tr. at 5.

[27]Doc. No. 482 -- Sentencing Tr. at 5.

[28]*Id.* at 6.

***IN CONNECTION WITH OBJECTIONS TO THE PRESENTENCE REPORT:***

| Morehead's Letter | Sentencing Hearing Testimony |
|---|---|
| I did not adequately contest my clients P.S.I. Report.  I only submitted the pre-sentence objections I prepared.  Although Mr. Stovall gave me ten objections, I only submitted two.  I also should have asked for an continuance to review the Clay Trial transcripts when it was submitted.[29] | *The Court*:  Defendant objects to paragraph 18, the relevant conduct that was used in the presentence report to establish a base offense level.  The Defendant contends that the participants convicted for their involvement in the murder did not plead guilty to a drug conspiracy as the Defendant did.  He also objects to using the relevant conduct to which he did not stipulate and for which conduct he reported withdrawing.  Regarding the testimony of the -- at the trial of Vertis Clay, which established relevant conduct, the Defendant stated the testimony was tainted with perjury, was self-serving, and did not point to the involvement on Calvin Stovall directly.  I, of course, heard the trial of -- presided over the trial of Vertis Clay and recall much of that testimony, of course, but I understand the government has -- on this objection by the Defendant – did I state your objection correctly,  Mr. Morehead? |
|  | *Morehead*:  That's basically it, sir.[30] |
|  | § 2255 Hearing Testimony |
|  | *AUSA*:  In this position and objection to the presentence report, you summarized the Defendant's position and objection and then expanded on it.  Is that correct? |
|  | *Morehead*:  Yes.[31] |
|  | *AUSA*:  Mr. Morehead, did you prepare these presentence positions -- presentence investigation report, did you prepare this? |
|  | *Morehead*:  Yes.[32] |

---

[29]Doc. No. 510.

[30]Doc. No. 482 -- Sentencing Tr. at 8-9.

[31]Doc. No. 578 -- § 2255 Hearing Testimony at 45.

[32]*Id*. at 44.

| *IN CONNECTION WITH DISCOVERY AND CALLING WITNESSES AT SENTENCING*: | |
|---|---|
| Morehead's letter | § 2255 Hearing Testimony |
| I, Robert Morehead, failed to properly investigate my case by not interviewing all witnesses, examining physical evidence, and retaining any motion of discovery to properly fight my case in the Calvin Stovall trial . | *AUSA*:    Before we took the break, we established that, in fact, you did review discovery materials. |
| Lastly, I failed to call witnesses and present favorable evidence at the sentencing hearing that would prove Mr. Stovall's innocence.  I did not interview or subpoena any witnesses that would have had a meaningful testimony to refute the Government's evidence.  When I did request to subpoena certain witnesses, the court denied my request and I did not appeal the ruling.[33] | *Morehead*:    I did review discovery materials.[34] |
| | *Morehead*:    I was advised that these were for my eyes only.  And the only way that I got access to most of these reports as I was required to come to the U.S. Attorney's office and sit down, not with anything to copy, with a pad and a pencil and a piece of paper.  And they would bring me five, six hundred sheets at a time.[35] |
| | *AUSA*:    At the sentencing hearing, do you recall that you called **five** witnesses of your own?[36] |

## C.    Ineffective Assistance of Counsel

Morehead's letter and his testimony at the § 2255 Hearing nowise square with the statements he made at the change-of-plea or sentencing hearings.  But even if Morehead's representation was ineffective, Stovall cannot show prejudice.  It is for these reasons, as explained in more detail below, that Stovall's Motion fails.

---

[33]Doc. No. 510.

[34]Doc. No. 578 -- § 2255 Hearing Tr. at 33.

[35]Doc. No. 578 -- § 2255 Hearing Tr. at 84.

[36]Doc. No. 578 -- § 2255 Hearing Tr. at 41 (emphasis added).

To prevail on a claim of ineffective assistance of counsel, Stovall first must show that his counsel's performance fell below an objective standard of reasonableness.[37]  Stovall must identify the acts or omissions of counsel that are alleged to have been the result of unreasonable professional judgment.[38]  The court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.[39]  Stovall faces a great burden in that "judicial scrutiny of a counsel's performance is highly deferential" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[40]

Even if a court finds deficient performance of counsel, Stovall must also establish prejudice;[41] a finding of deficiencies could be defended.  To establish prejudice, Stovall must demonstrate that, but for his counsel's errors, there is a reasonable probability[42] the result of the proceeding would have been different -- that is, that he would not have pled guilty, but would have insisted on going to trial.[43]

---

[37] See *Padilla v. Kentucky,* 130 U.S. 1473, 1482 (2010); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Larson v. United States*, 833 F.2d 758, 759 (8th Cir. 1987).

[38] *Strickland*, 466 U.S. at 690.

[39] *Id.*

[40] *Id.* at 689; *Driscoll v. Delo*, 71 F.3d 701, 706 (8th Cir. 1995).

[41] *Strickland*, 466 U.S. at 694.

[42] *Id.* (where reasonable probability is "a probability sufficient to undermine confidence in the [proceeding's] outcome."); *Larson*, 833 F.2d at 759.

[43] *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

So, the test has two parts: (1) deficient performance; and (2) prejudice.  If Stovall fails to establish either part of this test, I need not consider the remaining element of the test.[44]

Stovall alleges multiple reasons as to why counsel was ineffective: (1) failure to properly explain the plea agreement; (2) lack of discovery; (3) failure to have witnesses subpoenaed; (4) failure to object to the Court's denial to subpoena witnesses; (5) failure to show how the severance prejudiced him; (6) failure to object to the pre-sentence report; and (7) failure to request a continuance to review severed co-defendants' trial transcript.[45]  Each claim is addressed below.

### 1.      Failure to Properly Explain the Plea Agreement

Stovall asserts that his lawyer failed to properly explain the consequences of the plea agreement.  He contends that "Morehead did not understand, or appreciate, the Federal Sentencing Guidelines and that the advice he gave . . . was simply wrong."[46]  Stovall maintains that counsel was deficient for failing to foresee and explain the applicability of USSG §§ 2D1.1 and 2A1.1.  Section 2D1.1(d)(1) provides a cross reference to § 2A1.1 if a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111.  Section 2A1.1 established a base offense level of 43, which resulted in a sentencing range of life imprisonment.

As seen from Morehead's letter, reproduced above, he contends (as the § 2255 Hearing approached) that he failed to properly explain the plea agreement.

---

[44]*Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

[45]Stovall's amended Motion focuses on counsel's alleged failure to adequately explain the consequences of the plea agreement and failure to obtain discovery / conduct a meaningful investigation.  Doc. No. 563.

[46]Doc. No. 563.

Considering that the plea agreement specifically identified an enhancement dispute together with the fact that murder-related questions arose at the plea hearing, it is apparent from the very beginning of the change-of-plea hearing, both parties anticipated that murder-related conduct would be an issue at sentencing.  When I explained that I would generally sentence within the USSG range unless there was some reasonable ground to go above or below, Stovall asked me: "Reasonable grounds would be relevant conduct or something of that nature?"[47]  In any event, Stovall was aware of the statutory maximum -- life -- and admitted that he was guilty of distributing marijuana.[48]  If counsel led Stovall to believe that he would be at a lower range under the USSG, an attorney's erroneous prediction regarding a defendant's sentence is not ineffective assistance.[49]  And at sentencing, Stovall reaffirmed that he was satisfied with Morehead as his lawyer.[50]

As stated above, even if Stovall can show deficient performance, he cannot show prejudice.

---

[47]Doc. No. 481 -- Plea Tr. at 4.  Again at sentencing, Stovall spoke of relevant conduct -- and showed that he was aware that murder-related conduct would be considered in connection with his sentence.  He said he should be allowed to withdraw his guilty plea because he did not "plead to the . . . irrelevant [sic] conduct."  Doc. No. 482 -- Sent. Tr. at 5.

[48]Doc. No. 482 -- Sent. Tr. at 5.

[49]*United States v. Nesgoda*, 559 F.3d 867, 770 n.2 (8th Cir. 2009) ("Counsel's incorrect estimate of a sentencing range was not ineffective assistance of counsel.") (citing *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir. 1994)); *United States v. Sweeney*, 878 F.2d 68, 70 (8th Cir. 1989) (district court affirmed where counsel predicted USSG range of 21-27 months, but court found range of 51-63 months and sentenced defendant to 57 months).

[50]Doc. No. 482 -- Sent. Tr. at 5.

Stovall asserts that if he had known the consequences of the plea agreement, he would have gone to trial. If he had gone to trial and been convicted only of Count 1, USSG §§ 2D1.1(d)(1) and 2A1.1 still would have applied.[51]

If Stovall had pled to, or had been found guilty of, Count 1 in addition to either of the remaining counts, the statutory maximum -- life -- would be the same. Further, Count 2 alleged conspiracy to use and discharge a firearm during and in relation to a drug trafficking crime, and Count 3 charged Stovall with solicitation of a crime of violence. For Stovall to have pled to Count 2 or 3, he would have had to admit relevant facts; similarly, if the jury convicted him, that means that he was found guilty of using and discharging a firearm during and in relation to a drug trafficking crime or soliciting a crime of violence. The addition of Count 2 or 3 (or both) would have only strengthened the evidence against Stovall in connection with the murder.

As repeatedly set out above, Stovall faced a statutory maximum sentence of life on Count 1. That the cross-reference applied, causing a USSG range of life, is not, standing alone, determinative. The USSG are just that -- guidelines. I am not bound by the USSG. I was satisfied beyond a reasonable doubt on all the critical issues pertaining to Stovall's plea and sentencing hearings.[52] So, had additional counts been at play -- making the cross-reference inapplicable -- I still could have and would have considered Stovall's murder-related conduct under 18 U.S.C. § 3553.

---

[51] See *United States v. Montgomery*, 262 F.3d 233 (4th Cir. 2001) (application of 2A1.1 and imposition of life sentence affirmed where defendant was convicted by jury of drug conspiracy charge but acquitted by jury of murder charge).

[52] I added Exhibit A to Judgment and Commitment -- Regarding Enhancements (Doc. No. 471) to point out my dissatisfaction in sentencing Stovall to life, "rather than a sentence of about 135 months, because of an enhancement that is bottomed upon 'the greater weight of the evidence.'"

I note that at the § 2255 Hearing, Stovall's lawyer acknowledged that I had the authority to sentence above the USSG:

| | |
|---|---|
| *The Court*: | Pardon me, Mr. Wyatt.  If he went to trial and lost or pled guilty to all three or lost on all three, assuming the jury found that he was involved in Count 2 which involved a murder, what would keep me, the Court, whoever is the Court, from giving him life, going above the guideline? |
| *Mr. Wyatt*: | The possible sentence for Count 1 would have allowed that and you would have just had to state the reasons that made it an appropriate sentence.  The guidelines I don't think would have gotten you to a range that would have been anywhere close to that.  I think it would have been 20 to 30 years, somewhere in there.[53] |

Because life was the maximum penalty under the count to which Stovall pled, because I would not have been bound by any lesser USSG range had other Counts been at play, and because I could have (and would have) properly considered Stovall's murder-related conduct under 18 U.S.C. § 3553, Stovall suffered no prejudice.

## 2.    Lack of Discovery

Stovall contends that his counsel was ineffective because counsel did not review documents that the Government made available to him.  Stovall maintains that "had counsel investigated the case . . . [Stovall] would have able to present evidence that would have changed the government alleged theory, about the drug conspiracy to which I plead, was not part of the unrelated murder charge."[54]

Stovall's claim that Morehead did not review documents that the Government had made available to him is contradicted by Morehead's remarks, and the remarks of the AUSA, at the sentencing hearing.  In connection with discovery, Morehead said:

---

[53]Doc. No. 578 -- § 2255 Hearing Tr. at 10-11.

[54]Doc. No. 509.

> In response to discovery -- and we never got past that point, and the judge never made any different ruling. I was advised that these [documents] were for my eyes only. And the only way that I got access to most of these reports is I was required to come to the U.S. Attorney's Office and sit down, not with anything to copy, with a pad and a pencil and a piece of paper. And they would bring me five, six hundred sheets at a time.[55]

It is clear from Moorehead's statement that he reviewed documents at the U.S. Attorney's Office. Further, the AUSA said:

> Your Honor, I was at Morehead's office when previous counsel for Stovall mailed copies to Morehead at his office. He had an envelope. He opened it up, which was a violation of the rules that we had reached. In a nutshell, Your Honor, I know for a fact that Morehead had hard copies of these documents.[56]

Morehead did not deny or object to the AUSA's remarks at sentencing. Then-AUSA Joe Volpe's remark at sentencing is consistent with his affidavit attached, to the Goverment's Post Hearing Brief.[57] In his affidavit, Volpe estimates that he met with Moorehead on more than 30 occasions, and that they met at least once in Moorehead's office in Pine Bluff. Whether or not Moorehead had hard copies of the documents, both his statement at the sentencing hearing and Volpe's affidavit establish that Moorehead reviewed documents.

Further, at the § 2255 Hearing, Morehead acknowledged that he reviewed discovery materials[58] -- despite the statements in his letter, written more than two-and-a-half years after the fact. Stovall fails to satisfy the deficiency prong on this claim.

Even if Stovall could prove deficiency, he failed to show prejudice. In his pro se Motion, Stovall argues that phone records would have proved that he was not involved in the murder of

---

[55]Doc. No. 482 -- Sent. Tr. at 84.

[56]*Id*.

[57]Doc. No. 584.

[58]Doc. No. 578 -- § 2255 Hearing Tr. at 33.

Darryl Johnson.[59]  Stovall's Amended Motion contends that if "Morehead had conducted proper investigation, obtained and reviewed discovery, as well as researched Mr. Stovall's potential sentence, he would have discovered the cross-reference."[60]

The relevance -- or irrelevance -- of the applicability of the cross-reference has already been discussed above.  Stovall did not present evidence at the § 2255 Hearing about the telephone records, so I am unable to conclude if anything in the records likely would have changed the outcome of the proceedings.

### 3.      Failure to Subpoena Witnesses

Stovall asserts that he gave counsel a list of potential witnesses, but that counsel never subpoenaed the witnesses.  Morehead, in his January 2011 Letter, agrees.[61]

But again, Morehead's statements at the sentencing hearing conflict with his January 2011 Letter.  I note that, in the sentencing hearing, Moorehead referenced speaking with Benito Naito-Gastelum, a Government witness.  Moorehead also referenced attempting to speak with another witness, Keon Neely.[62]  Further, Morehead called 5 witnesses at the sentencing hearing.

As to Stovall's complaint that Morehead did not subpoena the witnesses that Stovall wanted, "[b]ecause of the problems inherent in hindsight analysis, we 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

---

[59]Doc. No. 509.

[60]Doc. No. 563.

[61]*Id.*

[62]Doc. No. 482 -- Sent. Tr. at 214-15.

assistance.'"[63]  Decisions involving strategy are "virtually unchallengeable."[64]  Strategies relating

to witness selection "are normally left to counsel's judgment, and this judgment will not be

second-guessed by hindsight."[65]  Stovall fails here on the deficiency prong.

Assuming Stovall could show deficiency, again he cannot show prejudice.  Stovall has

not identified the witnesses or their prospective testimony, so I cannot determine if any

testimony likely would have changed the outcome of these proceedings.

### 4.      Failure to Object to the Court's Denial to Subpoena Witnesses

Shortly before the sentencing hearing, Morehead faxed to my office objections to the

pre-sentence report.[66]  In the same fax, Morehead sought "permission to secure testimony of

persons currently in Federal custody that will specifically contradict the theory of the

prosecution, in the dismissed counts and raise serious question about the testimony tendered in

the murder trial of a codefendant."  I replied that "[i]t is too late for us to attempt to try to get

incarcerated witnesses to court by next Tuesday, June 3, 2008 -- even assuming you have the

right to compel those witnesses to come to court."[67]

The Government "in its good graces"[68] issued a writ for the transportation of Keon Neely,

a witness at the sentencing hearing.  Again, neither Stovall nor Morehead specified which other

incarcerated witnesses, if any, Morehead failed to subpoena or what Stovall expected the

---

[63]*Loefer v. United States*, 604 F.3d 1028, 1029-30 (8th Cir. 2010) (quoting *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005)).

[64]*Id.* at 1030 (internal citations omitted).

[65]*Walls v. Bowersox*, 151 F.3d 827, 834 (8h Cir. 1998) (citing *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990)).

[66]Doc. No. 510.

[67]*Id.*

[68]Doc. No. 483 -- Sent. Tr. at 215.

testimony to be.  Even if Morehead was ineffective for not objecting when I said there was not

time for incarcerated witnesses to get here before the hearing, Stovall cannot show prejudice

because there is no way to determine what these unidentified potential witnesses might have said

and what effect the testimony may have had on the outcome of the proceeding.

### 5.      Failure to Show How the Severance Prejudiced Stovall

Stovall challenged the severance on appeal.  The Eighth Circuit found that "Stovall has

not demonstrated how, if at all, he was prejudiced by the court's grant of the government's

motion.  Even if the district court abused its discretion in granting the severance motion, Stovall

has not shown that the error compromised his defense in any meaningful respect."[69]

Because the Eighth Circuit failed to find prejudice in connection with the severance, I

will not address this claim further.

### 6.      Failure to Object to the Pre-Sentence Report

Stovall asserts that his counsel was ineffective for submitting only two objections to the

pre-sentence report, when Stovall objected to all relevant conduct regarding the murder.[70]

Again, Morehead agrees.[71]

After the plea hearing, Morehead asserted that evidence regarding co-defendants'

conduct should not be heard at sentencing, as is reflected in written objections he submitted

before sentencing.[72]

---

[69]*United States v. Clay*, 579 F.3d 919, 928 (8th Cir. 2009).

[70]Doc. No. 509.  The document Stovall references as making two objections is the 3-page
Defendant's Position and Objection to the Pre-Sentence Investigation Report that Morehead
submitted before sentencing.  Doc. No. 510, Ad. 15.  The Court is unclear about Stovall's
reference to two objections.

[71]Doc. Nos. 510, 563.

[72]*Id.*

Defendant agreed to enter a guilty plea to Count One . . . , which recites that he conspired with others to distribute at least 100 kilograms of marijuana.  The remaining conspirators were Darryl Johnson, Benito Naito Gastelum, Robert Arnett and Nicholas Mendes Morales.  All other counts were dismissed . . . .

There was never any conspiracy count that alleges any participation by Darryl Walker, Vertis Clay nor David Tidwell.  Darryl Walker nor Vertis Clay were ever [sic] convicted or did they plead to Count One of the . . . indictment.  The parties never stipulated to any relevant conduct that the Government apparently contends may apply from counts two and three . . . .[73]

Defendant seeks permission to secure testimony of person currently in Federal custody that will specifically contradict the theory of the prosecution, in the dismissed counts and raise serious  question about the testimony tendered in the murder trial of a codefendant. Considering that culpability is being assigned to defendant . . . .[74]

Then, at the sentencing hearing, Morehead objected to my consideration of conduct regarding the murder in establishing a base offense level.[75]  I will not second guess counsel's strategy in deciding which other objections to make.  Stovall did not describe the omitted objections, making it impossible to determine any effect the omitted objections might have had.

### 7. Failure to Request Continuance to Review Co-Defendants' Trial Transcript

On appeal, Stovall argued that he "was denied counsel because evidence from Clay's trial was submitted without adequate lead time before Stovall's sentencing hearing."[76]  Here, Stovall asserts that his counsel was ineffective for failing to ask for a continuance to have time to review Clay's trial transcript.  The Eighth Circuit did not agree with Stovall's contention that admitting the transcript from Clay's trial made preparing for the sentencing hearing essentially impossible,

---

[73]Doc. No. 510.

[74]*Id.*

[75]Doc. No. 482 -- Sent. Tr. at 8.

[76]*Clay*, 579 F.3d at 928.

and neither do I.[77]  As pointed out by the Eighth Circuit, it was not necessary to review the entire

Clay transcript in preparation for trial.[78]  Further, at the § 2255 Hearing, I asked Stovall's lawyer

to "[t]ell me specifically how [Stovall] was prejudiced by Morehead not reviewing the . . .

transcript of the Vertis Clay trial."[79]  Stovall did not specify at the hearing, or in his post-hearing

brief, what in the transcript likely would have changed the outcome of these proceedings.

Stovall fails here on both prongs of the ineffective counsel test.

### C.      Voluntariness of Plea

"Out of just consideration for persons accused of crime, courts are careful that a plea of

guilty shall not be accepted unless made voluntarily after proper advice and with full

understanding of the consequences.  When one so pleads, he may be held bound."[80]  Whether a

plea was made voluntarily is a mixed question of law and fact.[81]  "The test for determining the

validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among

the alternative courses of action open to the defendant.'"[82]  A plea may be involuntary if the

defendant "does not understand the nature of the constitutional protections that he is waiving . . .

or because he has such an incomplete understanding of the charge that his plea cannot stand as

an intelligent admission of guilt."[83]

---

[77]*Id*. at 929.

[78]*Id*.

[79]Doc. No. 578 -- § 2255 Hearing Tr. at 65.

[80]*United States v. Frook*, 616 F.3d 773, 775 (8th Cir. 2010) (quoting *Kercheval v. United States*, 274 U.S. 220 (1927)).

[81]*Perter v. Lockhart*, 925 F.2d 1107, 1109 (8th Cir. 1991).

[82]*Id.* at 1110 (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

[83]*Ivy v. Caspari*, 173 F.3d 1136, 1141-42 (8th Cir. 1999) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

There is abundant "circuit precedent holding that inaccurate advice of counsel about the USSG or likely punishment does not render a defendant's decision to plead guilty involuntary, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range."[84]  "[W]hile a guilty plea taken in open court is subject to collateral attack, the defendant's representations during the plea-taking carry a strong presumption of verity . . . ."[85]

Stovall's plea agreement outlined the statutory minimum of not less than 10 years and maximum of not more than life.  The plea agreement also contained the following stipulations:

> 5. STIPULATIONS: The United States and the defendant stipulate to the following:
>
> A. The parties agree on the fact that Defendant Stovall conspired with individuals including Darryl Johnson, Benito Naito-Gastelum-Gastelum, Robert Arnett, and Nicholas Mendez-Morales to distribute and possess with intent to distribute at least 100 kilograms of marijuana. Therefore, a trial is not necessary to determine guilt or innocence as to Count 1 of the Fifth Superseding Indictment.
>
> B. The parties, however, disagree about the potential sentence in this matter and specifically the United States Sentencing Guidelines enhancements that may or may not be applicable. Therefore the parties request that the Court hold a sentencing hearing for both sides to present evidence regarding the application of any guideline enhancements.[86]

At the change of plea hearing, Stovall represented that he was fully at himself and that he had talked with his lawyer about what it meant to plead guilty to Count 1.[87]  He said he understood the basics of the USSG.[88]  I explained the pre-sentence report, and that I would generally

---

[84]*United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009).

[85]*Bramlett v. Lockhart*, 876 F.2d 644, 648 (8th Cir. 1989) (citations omitted).

[86]Doc. No. 510.

[87]Doc. No. 481 -- Plea Tr. at 3.

[88]*Id*. at 4.

sentence within the USSG range unless there was a reasonable ground not to.[89]  Stovall then

asked if a reasonable ground "would be relevant conduct or something of that nature," to which I

answered "yes."[90]

Stovall was informed that under the plea agreement, "both sides reserve the right to

present evidence to me about why your sentence should be less, or the prosecution may

introduce evidence as to why it should be greater,"[91] and confirmed that he understood.  He

declined a recess to talk any more with his lawyer, and declined to ask me any questions, saying

"I'm pretty   much -- I pretty much know."[92]  Stovall's lawyer confirmed that they had been over

the sentencing rules, regulations, and procedures.[93]  Stovall said that he was pleased with

Morehead as his lawyer.[94]

Stovall was informed of the statutory minimum and maximum (the latter, life), and said

he understood the penalties.[95]  I told Stovall that he could plead guilty or not guilty, but that if he

pled guilty, "a plea of guilty in open court is the strongest proof known to the law."[96]  He said he

understood.  I again explained the pre-sentence report, and pointed out that statutes sometimes

control the minimum sentence that must be imposed.

---

[89]*Id.*

[90]*Id.*

[91]*Id.*

[92]*Id.* at 5.

[93]Doc. No. 481 -- Plea Tr. at 5.

[94]*Id.*

[95]*Id.* at 6.

[96]*Id.* at 8.

The AUSA pointed out that Stovall did not have the right to withdraw his plea agreement if he did not like the sentence, and Stovall responded that he was aware of that fact.[97]  I again mentioned that, at the sentencing hearing, the Government would be able to "bring in bad things about you to try to get me to give you more, and you can bring in good things about you to try to get me to give you less than the sentencing guideline."[98]  Stovall indicated he understood.[99]  He also indicated that he understood that the standard of proof at the sentencing hearing would be the greater weight of the evidence rather than beyond a reasonable doubt.[100]

When asked if the plea agreement was the best route for him, Stovall answered yes, and said he wanted me to approve the plea agreement.[101]

Stovall pled guilty to Count 1, and affirmed that no threats or promises, outside those in the plea agreement, had been made to him to get him to plead guilty.

In closing the plea hearing, I noted that it would be litigated at sentencing as to whether Stovall was involved with the Clay homicide.[102]  Both Morehead and Stovall said that they understood.

Stovall was informed of the maximum statutory penalty -- life -- and of the fact that his sentence would be decided at a hearing in which I would consider his involvement with Clay regarding the homicide.  At no point did Stovall waiver about his plea of guilty or about his

---

[97]*Id.* at 10.

[98]*Id.*

[99]Doc. No. 481 -- Plea Tr. at 11.

[100]*Id.*

[101]*Id.* at 12.

[102]*Id.*

satisfaction with Morehead as his attorney.  Stovall entered his plea voluntarily.  No evidence

presented at the July 6, 2012 hearing, or in Stovall's pleadings, indicates otherwise.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Petitioner's Motion and

Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. Nos.

508, 563) are DENIED.

IT IS SO ORDERED this 9th day of October, 2012.


/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE